IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DWIGHT MARTIN,

                Petitioner,

      vs.

MATTHEW CATE, Secretary, California
Department of Corrections and
Rehabilitation,

              Respondent.

No. 2:10-cv-00590-JKS

MEMORANDUM DECISION

Dwight Martin, a state prisoner appearing *pro se* filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254.  Martin is currently in the custody of the California Department of Corrections and Rehabilitation, incarcerated at the California Medical Facility.  Respondent has answered, and Martin has replied.

## I.  BACKGROUND/PRIOR PROCEEDINGS

In March 1994 following his conviction of Murder in the First Degree, Cal. Penal Code § 187, with enhancements for the use of a firearm, Cal. Penal Code § 12022.5(a)(1), and as a serious felony, Cal. Penal Code § 667(a), Martin was sentenced to an aggregate prison term of thirty-four years to life.  Martin does not challenge his conviction or sentence in this proceeding.

In April 2006 Martin was charged in a Rules Violation Report ("RVR") with distribution of a controlled substance (marijuana),[1] a serious rules violation.[2]  In May 2007 following a prison

---

[1] Cal. Code Regs., tit. 15, § 3016(a).

[2] Cal Code Regs., tit. 15, § 3315(a)(2)(D).

disciplinary hearing before a Senior Hearing Officer ("SHO"), Martin was found not guilty of distribution but guilty of introduction of a controlled substance and assessed a 180-day forfeiture of good-time credit.[3]  On administrative appeal at the departmental level,[4] Martin's conviction was further reduced from "introduction," a Class A-2 offense, to "possession," a Class B offense, and the penalty assessed was reduced from 180 to 150 days.[5]  Martin timely filed a petition for habeas relief in the Fresno County Superior Court, which denied his petition in an unreported, reasoned decision.  The California Court of Appeal, Third Appellate District, summarily denied Martin's habeas petition without opinion or citation to authority in an unreported decision.  The California Supreme Court also summarily denied Martin's habeas petition without opinion or citation to authority in an unreported decision on September 30, 2009.  Martin timely filed his Petition for relief in this Court on February 23, 2010.

The facts underlying Martin's conviction are summarized in the Crime/Incident Report:

On Sunday. April 9, 2006, at approximately 1515 hours, Officer Dutra, conducted an unclothed body search of Martin upon completion of his scheduled visit[.]  While searching Martin's jacket, Officer Dutra felt a lump in the right sleeve.  Upon further inspection Officer Dutra turned the right sleeve inside out and discovered a concealed pocket sewn into the sleeve[.]  Officer Dutra inspected the contents of the pocket and located a plastic zip lock bag inside[.]  The plastic bag contained approximately 6.9 grams of a green leafy substance suspected to be marijuana (inclusive of packaging).  Martin witnessed Officer Dutra's findings and immediately stated, "that's not

---

[3] The record indicates that the reason for the lengthy delay was because Martin requested that the disciplinary proceeding be postponed pending the completion of a parallel criminal proceedings in state court.  Cal. Code Regs., tit. 15, § 3316(c).  The District Attorney declined to prosecute on April 2, 2007.  Docket No. 17-1 at 3.

[4] Prison disciplinary actions are subject to internal administrative review at both the institutional and departmental levels.  Cal. Code Regs., tit. 15, §§ 3084.1, 3084.2, 3084.7, 3084.9.

[5] Docket No. 17-1 at 6, 42.

2

mine[.]"  A Narcotics Identification Kit (NIK) test of the contents tested positive for marijuana.[6]

## II.  GROUNDS RAISED/DEFENSES

In his Petition Martin raises three grounds: (1) denial of the right to call witnesses; (2) denial of the right to introduce exculpatory evidence; and (3) the decision of the Fresno County Superior Court was contrary to the facts.  Respondent asserts no affirmative defense.[7]

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[8]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[9]  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[10]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court

---

[6] Docket No. 17-1 at 18.

[7] Rules Governing Section 2254 Cases in the U.S. Dist. Courts, Rule 5(b) (2011).

[8] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[9] *Williams*, 529 U.S. at 412 (alteration added).

[10] *Early v. Packer*, 537 U.S. 3, 10 (2002).

'unreasonabl[y] appli[ed] clearly established Federal law.'"[11]  When a claim falls under the "unreasonable application" prong, a state court's application of Supreme Court precedent must be "objectively unreasonable," not just "incorrect or erroneous."[12]  The Supreme Court has made clear that the objectively unreasonable standard is "a substantially higher threshold" than simply believing that the state-court determination was incorrect.[13]  "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[14]  In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state court criminal trial is whether the error had a substantial and injurious effect or influence in determining the outcome.[15]  Because state court judgments of conviction and sentence carry a presumption of finality and legality, the petitioner has the burden of showing by a preponderance of the evidence that he or she merits habeas relief.[16]

---

[11] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations in original) (citation omitted); *see also Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

[12] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[13] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams,* 529 U.S. at 410).

[14] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642, 643 (1974)).

[15] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[16] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (citations omitted); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

The Supreme Court recently underscored the magnitude of the deference required:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  *Cf. Felker v. Turpin,* 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244).  *It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther.*  Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal.  *Jackson v. Virginia,* 443 U.S. 307, 332, n.5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment).  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.[17]

In applying this standard, this Court reviews the "last reasoned decision" by the state court.[18]  State appellate court decisions that summarily affirm a lower court's opinion without explanation are presumed to have adopted the reasoning of the lower court.[19]  This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court.[20]

---

[17] *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011) (emphasis added).

[18] *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)); *cf. Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) (explaining "how federal courts in habeas proceedings are to determine whether an unexplained order . . . rests primarily on federal law," and noting that federal courts must start by examining "the last reasoned opinion on the claim . . . . ").

[19] *Ylst*, 501 U.S. at 802-03 ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."); *cf. Richter*, 131 S. Ct. at 784 ("As every Court of Appeals to consider the issue has recognized, determining whether a states court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.").

[20] *See Richter*, 131 S. Ct. at 784-85 (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference).

Under California's unique habeas procedure, a prisoner who is denied habeas relief in the

superior court files a new original petition for relief in the court of appeal.  If denied relief by the

court of appeal, the defendant has the option of either filing a new original petition for habeas

relief or a petition for review of the court of appeal's denial in the California Supreme Court.[21]

This is considered as the functional equivalent of the appeal process.[22]  Under AEDPA, the state

court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption

by clear and convincing evidence.[23]  This presumption applies to state-trial courts and appellate

courts alike.[24]

A state court is not required to give reasons before its decision can be deemed to be

"adjudicated on the merits."[25]  When there is no reasoned state-court decision denying an issue

presented to the state, "it may be presumed that the state court adjudicated the claim on the

merits in the absence of any indication or state-law procedural principles to the contrary."[26]

"The presumption may be overcome when there is reason to think  some other explanation for

---

[21] *See Carey v. Saffold*, 536 U.S. 214, 221-22 (2002) (citations omitted) (discussing California's "original writ" system).

[22] *See id.* at 222 ("Thus, typically a prisoner will seek habeas review in a lower court and later seek appellate review in a higher court . . . .").

[23] 28 U.S.C. § 2254(e)(1); *see also Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary . . . ." (citing 28 U.S.C. § 2254(e)(1))).

[24] *See Stevenson v. Lewis*, 384 F.3d 1069, 1072 (9th Cir. 2004) ("Stevenson does not address these factual findings, let alone challenge them with clear and convincing evidence. Accordingly, we presume them to be correct." (citing 28 U.S.C. § 2254(e)(1); *Pollard v. Galaza*, 290 F.3d 1030, 1035 (9th Cir. 2002))).

[25] *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011)*.*

[26] *Id.* (citing *Harris v. Reed*, 489 U.S. 255, 265 (1989)).

the state court's decision is more likely."[27]   Where the presumption applies, this Court must

perform an independent review of the record to ascertain whether the state-court decision was

"objectively unreasonable."[28]   In conducting an independent review of the record, this Court

presumes that the relevant state-court decision rested on federal grounds,[29] giving that presumed

decision the same deference as a reasoned decision.[30]   The scope of this review is for clear error

of the state court ruling on the petition:

> [A]lthough we cannot undertake our review by analyzing the basis for the state
> court's decision, we can view it through the "objectively reasonable" lens ground by
> *Williams*. . . . Federal habeas review is not *de novo* when the state court does not
> supply reasoning for its decision, but an independent review of the record is required
> to determine whether the state court clearly erred in its application of controlling
> federal law.  Only by that examination may we determine whether the state court's
> decision was objectively reasonable.[31]

---

[27] *Id.* at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)).

[28] *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006) (quoting *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir. 2005) (per curiam)).

[29] *See Coleman v. Thompson*, 501 U.S. 722, 740 (1991) ("The presumption at present applies only when it fairly appears that a state court judgment rested primarily on federal law or was interwoven with federal law, that is, in those cases where a federal court has good reason to question whether there is an independent and adequate state ground for the decision."); *see also Harris*, 489 U.S. at 263.

[30] *Richter*, 131 S. Ct. at 784-85 (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference).

[31] *Delgado v. Lewis* (*Delgado II*), 223 F.3d 976, 982 (9th Cir. 2000) (citation omitted). *But cf. Lewis v. Mayle*, 391 F.3d 989, 996 (9th Cir. 2004) ("Our standard of review is not controlled by *Delgado v. Lewis* . . . . There, we held that where a state court provides no rational for a decision, a habeas court does not apply de novo review, but instead determines whether the state decision was objectively unreasonable based on its independent reading of the record.  Here, however, the state court was not silent as to its reasoning. . . .  Therefore, we review de novo whether Lewis waived his right to conflict free counsel . . . .").

"[A]lthough we independently review the record, we still defer to the state court's ultimate decision."[32]

## IV.  DISCUSSION

Prison disciplinary proceedings are not part of a criminal prosecution; therefore, the full panoply of rights due to a defendant in such a proceeding does not apply.[33]  In the context of prison disciplinary proceedings, the minimum requirements of due process are: (1) advance written notice of the charges brought against the inmate; (2) the right to call witnesses and present documentary evidence in his defense; (3) a written statement of the factfinder of the evidence relied on and the reasons for the disciplinary action taken;[34] and (4) the findings must be supported by some evidence in the record.[35]  Inmates do not, however, have a right of confrontation and cross-examination.[36]  The Petition in this case involves the right to call witnesses and present evidence.

Ground 1:  Right to Call Witnesses

Martin requested that an inmate (Ramirez) and staff member (Arredondo) be present during the hearing.  The SHO denied Martin's request:

> Inmate Ramirez, C25721, was denied because Martin stated Ramirez would testify he talked to Martin as Martin was going out to the visit and he did not have a jacket with him.  SHO determined Ramirez was not in the visiting room at the time of the incident and could provide no further relevant information.
>
> * * * *

---

[32] *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

[33] *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

[34] *Id.* at 563-66.

[35] *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985).

[36] *Wolff*, 418 U.S. at 567.

P. Arredondo, Correctional Sergeant, was denied because Martin stated he wanted him to confirm the amount of inmates in the search area. SHO notes it is procedure for staff to have 4 to 5 inmates in the visiting search area at a time. SHO determined Sergeant Arredondo could provide no further relevant information.[37]

Martin contends that his due process rights were violated when the SHO refused to allow him to call those two witnesses. The Fresno County Superior Court rejected Martin's arguments, stating:

> Also, while [Martin] contends that it was a denial of his due process rights to refuse to allow him to call certain witnesses, an inmate does not have an absolute right to call witnesses at a disciplinary hearing. (*Wolff v. McDonell* (1974) 418 U.S. 539, 566.) The hearing officer may deny an inmate's request to call witnesses based on irrelevance, lack of necessity, or for reasons of institutional safety or for reasons of institutional safety and security. (*Ibid.*) Here, the hearing officer determined that [Martin's] requested witnesses would not be able to offer any relevant information, or that any information they might offer would be redundant. (See Ex. 1 to Informal Response, Rules Violation Report dated May 2, 2007, p. 2 of 4.) It appears that this decision was justified, since the witnesses either were not present during the incident or would not have offered any information that was not already on the record. (*Ibid.*) Therefore, this court declines to find that the hearing officer's decision to deny [Martin's] witnesses constituted a denial of due process.[38]

In *Wolff* the Supreme Court recognized that the right to call witnesses was tempered by the needs of prison administration requiring a measure of flexibility and accommodation. Accordingly prison officials have discretion to keep disciplinary hearings within reasonable limits, including excluding witnesses for irrelevance or lack of necessity for the evidence, or the risks of reprisal or undermining of authority.[39] Here, even though he was not required to do so, the SHO provided cogent explanations for declining to call either of the witnesses sought by

---

[37] Docket No. 17-1 at. 4.

[38] Docket No. 17-1 at 63-64.

[39] *Wolff*, 418 U.S. at 566; *see Baxter v. Palmigiano*, 425 U.S. 308, 321 (1976) (noting the limited right to call witnesses under *Wolff*); *Bostic v. Carlson*, 884 F.2d 1267, 1271 (9th Cir. 1989) (noting that the excluded witnesses could not provide new, relevant information).

Martin.  This Court cannot find that the decision of the Fresno County Superior Court was either contrary to or an unreasonable application of *Hill*, or an unreasonable determination of the facts in light of the evidence presented to that court.[40]  Martin is not entitled to relief on the basis that he was denied the right to call witnesses.

In his first ground Martin also argues that he was denied due process when he was denied a thirty-day delay in the hearing in order to prepare his defense.  Approximately three weeks prior to the hearing, Martin requested a list of the inmates who were present in the visiting center.  The supplemental report by the Investigative Employee ("IE") stated with respect to Martin's request: "I contacted Visiting Lieutenant D. Nelson on 04/07/2007 regarding this request.  He advised me that a list of visitors is kept but not necessarily of inmates.  As it is, the records concerning visitors on 04/09/2006 are archived and are not readily available."[41]  A handwritten notation on the supplemental report indicates Martin received a copy of it on April 13, 2007.  In denying Martin's request, the SHO referred to the IE report.[42]

The day after he received the supplemental IE report, April 14, 2007, Martin submitted a written request for a thirty-day postponement of the hearing contending that the delay was necessary to obtain the names of the inmates from the archives who received visitors on April 9, 2006.[43]  Martin further indicated in that postponement request that he would request the IE to interview those inmates who were in the search area at the time the marijuana was found.

---

[40] *See* 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[41] Docket No. 17-1 at 56.

[42] Docket 17-1 at 4.

[43] Docket No. 17-1 at 57.

Assuming that the inmates could be identified from the visitors list, Martin does not, however, indicate what questions would be propounded to the inmates to be interviewed.

It does not appear from the record that the SHO specifically ruled on Martin's request. However, because the hearing was conducted on May 2, 2007, eighteen-days after Martin made his request, it is apparent that the SHO did not honor Martin's request.  Although Martin raised this particular issue, it was not specifically addressed at any level of the administrative appeal process or by the Fresno County Superior Court.  Nor does Respondent address it.  Therefore, as noted above, this Court must independently review the record and decide the issue, assuming that the state court decided the issue on the merits and giving that assumed decision the same deference as a reasoned decision.[44]

California regulations provide that, unless a disciplinary hearing is held within thirty days of the date the inmate is provided a copy of the RVR, he or she may not be assessed a forfeiture of credits.[45]  The hearing may be postponed at the prisoner's request if, as in this case, there is also a referral for criminal prosecution.[46]  If postponed pending the outcome of a parallel criminal proceedings, the regulations require that the hearing be held within thirty days of receipt of the written notice that the prosecuting authority declines to prosecute.[47]  Thus, in this case, granting Martin's request would have taken the hearing out of that thirty-day window.  The hearing may

---

[44] *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002); *see supra* text accompanying notes 25-32.

[45] Cal. Code Regs., tit. 15, § 3320(f)(3).

[46] Cal. Code Regs., tit. 15, §§ 3316(c), 3320(f)(3).

[47] Cal. Code Regs., tit. 15, §§ 3316(c)(1)(C), 3320(f)(4).  The SHO specifically noted that the hearing was conducted within that thirty-day window.  Docket 17-1 at 3.

also be postponed for certain narrowly defined exceptional circumstances, or if the prisoner is transferred out of the custody of the department.[48]  Martin has failed to establish the existence of any exceptional circumstances warranting a further continuance.  In particular, Martin has not explained why he waited nearly a year to request the information he contends was critical to his defense.  Thus, it is clear that, under the governing regulations, Martin was not entitled to a further postponement of the hearing.

In the federal system, a decision by a trial court to continue a trial at the request of a criminal defendant is at the discretion of the trial court, subject to review for an abuse of discretion.[49]  This Court can conceive of no principled reason to apply a greater standard in prison disciplinary proceedings as a matter of constitutional due process.  Although the Ninth Circuit has suggested that an abuse of discretion may also amount to a constitutional violation,[50] the Supreme Court has never held that abuse of discretion is an appropriate basis for granting federal habeas relief.  Indeed, quite to the contrary, the Supreme Court has suggested that, while abuse of discretion is an appropriate standard on direct review, in a federal habeas proceeding it is not.[51]  Having failed to raise a question of constitutional dimension, Martin is not entitled to relief on the basis that the SHO denied him a continuance.

---

[48] Cal. Code Regs., tit. 15, § 3320(f)(3).

[49] *United States v. Garrett*, 179 F.3d 1143, 1144-45 (9th Cir. 1999) (en banc).

[50] *See Schell v. Witek*, 218 F.3d 1017, 1025 (9th Cir. 2000) (en banc).

[51] *See Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) ("It is not even whether it was an abuse of discretion for her to have done so—the applicable standard on direct review. The question under AEDPA is instead whether the determination of the Michigan Supreme Court that there was no abuse of discretion was "an unreasonable application of . . . clearly established Federal law." (citing § 2254(d)(1))).

Ground 2:  Right to Introduce Evidence

Martin requested that a videotape of the visiting room and search area be introduced into

evidence.  The SHO denied this request, holding:

> Visiting and Visiting search area videotapes.  As noted in Lt. Roberts report, he
> reviewed the video surveillance of the Facility C Visiting Room and noted no
> inappropriate activity.  The videotapes were not entered into evidence and are
> subsequently not available.[52]

The Crime/Incident Report prepared by Lt. Roberts as Watch Commander contained the

following statement:  "I reviewed the videotape monitoring the visiting room and could not

identify any inappropriate activity, which could be used as evidence in this matter."[53]  The record

also reflects the following excerpt from the report of the Investigative Employee:

> Correctional Officer J. Mendez stated, "On Friday, 06/16/06, I contacted the
> Investigative Services Unit (ISU), regarding the videotape requested by inmate
> MARTIN, J-16019.  I was informed that no such videotape was processed into
> evidence, also the videotape of Charlie Visiting on 04/09/06, had been recorded over
> already, per institutional procedure."[54]

Martin requested that the RVR be dismissed on the ground that, under California law

intentional but non-malicious destruction of evidence required the exclusion of evidence in

proceedings unless the agency showed that it had established and attempted to adhere to

procedures designed to preserve such evidence.  The Fresno County Superior Court rejected

Martin's argument, holding:

> Destruction of potentially exculpatory evidence may be a violation of due
> process where (1) the police acted in bad faith when they destroyed evidence, which
> (2) possessed an apparent exculpatory value and, which (3) is to some extent

---

[52] Docket No. 17-1 at 11-13.

[53] Docket No. 17-1 at 22.

[54] Docket No. 17-1 at 14.

irreplaceable.  (*Arizona v. Youngblood* (1988) 488 U.S. 51, 58.)  However, "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of the law." (*Ibid.*)

Here, the court finds that, based on the sealed declaration of D. Roberts, respondent's officers did not act in bad faith when they taped over the videotape, and that the videotape did not contain any exculpatory evidence.  While the contents of Roberts' declaration must remain confidential for reasons of institutional safety and security, it appears that the videotape did not contain any information that would have tended to establish [Martin's] innocence, nor did it contain any other relevant information.  Consequently, the hearing officer's decision to decline to introduce the tape into evidence or allow [Martin] to view the tape was not a denial of [Martin's] due process rights.[55]

Martin, citing a California Court of Appeal decision, requested that the SHO dismiss the RVR because the videotape was intentionally destroyed.[56]  The SHO, noted the request, and although he did not explicitly rule on it, implicitly denied it.[57]  In criminal prosecutions, to establish a constitutional due process violation the defendant must show that the prosecution acted in bad faith in destroying the evidence.[58]  No Supreme Court precedent indicates that a higher standard applies in prison disciplinary proceedings.  Indeed, the Supreme Court has clearly indicated that, because of the nature of prison disciplinary proceedings, the due process rules that apply in ordinary criminal proceedings do not automatically apply.[59]  Martin does not argue or offer any evidence that, in failing to preserve the videotape, the correctional officers were acting in bad faith.  At most, Martin raises an issue of California law not cognizable in a

---

[55] Docket No. 17-1 at 63.

[56] Docket No. 17-1 at 58.

[57] Docket No. 17-1 at 52.

[58] *Arizona v. Youngblood*, 488 U.S. 51, 56-58 (1988).

[59] *Wolff v. McDonnell*, 418 U.S. 539, 560-63 (1974).

14

federal habeas proceeding.[60]   In the absence of evidence that might support a finding that

*Youngblood* was violated, Martin is not entitled to relief on his second ground.

Ground 3:  Decision of Fresno County Court

In both his petition to the California Supreme Court and his Petition to this Court, Martin

contends that the Fresno County Superior Court denied him his constitutional rights and rendered

a decision contrary to the facts.  More specifically, Martin contends that the Fresno County

Superior Court: (1) improperly denied Martin the assistance of counsel; (2) improperly relied

upon the sealed declaration of Lt. Roberts regarding the contents of the videotape; (3) failed to

respond to Martin's arguments *vis-a-vis* the request for a thirty-day postponement and his request

for a list of inmates in the visiting center on April 6, 2006; and (4) applied the improper standard

of review.  As noted above, the California Supreme Court summarily denied Martin relief

without opinion or citation to authority.

Not one of Martin's arguments presents an issue of constitutional dimension.  There is no

constitutional right to counsel in a state habeas proceeding.[61]  As explained above, there is no

constitutional requirement that a state court give reasons for its decision.  When the state court

fails to address an issue, as explained in Part III, above, it simply requires that the federal habeas

court make a limited, independent assessment of the merits on the record before it.[61]

---

[60] *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) ("The short of the matter is that the responsibility for assuring that the constitutionally adequate procedures governing California's parole system are properly applied rest with California courts, and is not part of the Ninth Circuit's business.").

[61] *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("We have never held that prisoners have a constitutional right to counsel when mounting collateral attacks upon their convictions."); *Martinez v. Schriro*, 623 F.3d 731, 736 (9th Cir. 2010).

[61] *See supra* text accompanying notes 25-32.

Although it is not entirely clear, Martin appears to be arguing that Lt. Roberts committed perjury when he swore that he authored a Crime/Incident Report Part A1-Supplement dated April 10, 2006.[62]  Martin contends that, because Lt. Roberts did not work on April 10, 2006, and was not at the prison on that date, by saying under oath he "authored" the report, Lt. Roberts committed perjury.  The first, and major, flaw in Martin's argument is that he does not identify in the record where it is that Lt. Roberts swore under oath that he "authored the report."  Martin also acknowledges that although the report bears Lt. Roberts' name, Lt. Roberts did not sign the report.[63]  Instead, it was signed on April 10, 2006, by another person for Lt. Roberts.[64]  The record also reflects that, with respect to the question of the review of the videotape, Lt. Roberts stated in a report dated and signed by him on April 9, 2006, that: "I reviewed the videotape monitoring the visiting room and could not identify any inappropriate activity."[65]

Martin's reliance on the holding in *People v. Duvall* that "assuming the petition's factual allegations are true, the petitioner would be entitled to relief,"[66] as providing the appropriate standard of review in a state habeas proceeding is misplaced.  The *Duvall* standard is not only a state standard, but applies only at the preliminary stage, i.e., to avoid summary dismissal and require the state to respond to the allegations.  *Wolff* and *Hill* govern whether the decision of the state court satisfies federal constitutional requirements.  This Court's ruling on Martin's first two grounds answers that question adverse to Martin.

---

[62] Excerpts appear at Docket No. 17-2 at 46-47.

[63] Docket No. 17-2 at 45, 50.

[64] Docket No. 17-2 at 46-47.

[65] Docket No. 17-2 at 51.

[66] 886 P.2d 1252, 1258 (Cal. 1995).

## V.  CONCLUSION AND ORDER

Martin is not entitled to relief under any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ

of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of

Appealability.[67]  Any further request for a Certificate of Appealability must be addressed to the

Court of Appeals.[68]

The Clerk of the Court is to enter judgment accordingly.

Dated: February 10, 2012.

_/s/ James K. Singleton, Jr._____
JAMES K. SINGLETON, JR.
United States District Judge

---

[67] 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's  resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003))).

[68] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.